IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES EARL THOMAS, | } | |
| | } | |
| Petitioner, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 2:15-CV-0042-WMA |
| | } | |
| CARLOS OSEGUEDA, FHEO REGION IV DIRECTOR, et al., | } } | |
| | } | |
| Respondents. | } | |

**MEMORANDUM OPINION**

On January 26, 2015 this court issued a memorandum opinion granting the petition of James Earl Thomas for a writ of mandamus and ordered respondents Carlos Osegueda and Christian Newsome to show cause why a hearing on the matter was not required. (Doc. 5). On March 13, 2015, respondents filed their response requesting the court to reconsider its memorandum opinion and order, and to dismiss the petition for lack of jurisdiction because the "[Fair] Housing Act ["FHA'] does not give [respondents] jurisdiction to investigate and prosecute complaints raising allegations of discrimination based on sexual orientation." (Doc. 8 at 6). On April 23, 2015 Thomas filed a response (Doc. 9) and a separate motion for a ruling on the case (Doc. 10).

For the reasons set forth below, respondents' motion to dismiss will be granted and petitioner's motion for a ruling will be denied.

**I.   Jurisdiction under the FHA**

1

Were this an earlier decade, the government's motion to dismiss for lack of jurisdiction need only state that "[d]iscrimination based on sexual orientation is not covered under the [FHA]." *Swinton v. Fazekas*, 2008 WL 723914, at *5 (W.D.N.Y. Mar. 14, 2008); see 42 U.S.C. § 3601-19 and 24 C.F.R. § 100 et seq. Recently, however, the Department of Housing and Urban Development ("HUD") has taken several steps to clarify and reinforce the fact that certain acts of discrimination based on sexual orientation are in fact within its jurisdiction. Therefore, a more exacting review is required by the court of HUD's jurisdiction over discrimination based on sexual orientation and whether the particular discrimination alleged by Thomas is within such jurisdiction.

**a. HUD's expanded protections based on sexual orientation**

While Congress has not amended the FHA for some time,[1] HUD has taken an increasingly expansive view of its delegated authority under the FHA relating to discrimination based on sexual orientation.

In the summer of 2010, HUD issued a guidance document stating that "while the [FHA] does not specifically include sexual orientation and gender identity as prohibited bases . . . [an] LGBT person's experience with sexual orientation or gender identity

---

[1] Congress adopted minor revisions to the Fair Housing Act most recently in 1995 and 1996. *Housing for Older Persons Act of 1995,* PL 104-76, December 28, 1995, 109 Stat. 787, and *Omnibus Consolidated Appropriations Act 1997*, PL 104-208, September 30, 1996, 110 Stat. 3009.

2

housing discrimination **may** still be covered by the [FHA]." U.S. DEPT. OF HOUSING AND URBAN DEVELOPMENT, ENDING HOUSING DISCRIMINATION AGAINST LESBIAN, GAY, BISEXUAL AND TRANSGENDER INDIVIDUALS AND THEIR FAMILIES, June 15, 2010 (emphasis added). "The new [agency] guidance treats gender identity discrimination . . . as gender discrimination under the Fair Housing Act, and instructs all HUD staff to inform individuals filing complaints." Press Release, *HUD Issues Guidance on LGBT Housing Discrimination Complaints: Department addresses housing discrimination based on sexual orientation and gender identity*, HUD No. 10-139 (July 1, 2010).  When a complaint is filed on these grounds, "HUD now begins a formal investigation under the Fair Housing Act . . . [and] [s]ince issuing this guidance . . . [has] investigated more than 150 discrimination complaints under this authority." Prepared Remarks, Secretary of U.S. Dept. of Housing and Urban Development Shaun Donovan, *Before the National Association of Gay and Lesbian Real Estate Professionals*, May 15, 2013.

On February 3, 2012 HUD published a final regulation,[2] the Equal Access Rule, to implement "policy to ensure that its core programs are open to all eligible individuals and families regardless of sexual orientation, gender identity, or marital

---

[2] Congress has given HUD broad agency discretion to effectuate its purpose via rules and regulations. 12 U.S.C. § 1701c(a) ("[t]he Secretary . . . may make such rules and regulations as may be necessary to carry out his functions, powers, and duties").

3

status." *Equal Access to Housing in HUD Programs Regardless of Sexual Orientation or Gender Identity*, 77 Fed. Reg. 5662-01 (effective March 5, 2012). While the new regulation made various minor regulatory revisions to effectuate the rule's broader policy goal, the core provision of this new rule revised the eligibility requirements for HUD-assisted or insured housing to now require "such housing shall be made available without regard to actual or perceived sexual orientation, gender identity, or marital status." *Id*. HUD's new rule requirements are "handled in the same manner that violations of other program requirements are handled . . . [using the existing] mechanisms for addressing violations of program requirements." *Id*. For HUD-assisted or insured programs, "[i]f a participant . . . believes that the housing provider is not complying with program requirements, the individual may complain to the appropriate HUD office that administers the program (e.g., the Office of Public and Indian Housing, the Office of Community Planning and Development)." *Id*.

In HUD's comments accompanying the final Equal Access Rule, HUD noted that "certain complaints from LGBT persons would be covered by the Fair Housing Act . . . includ[ing] discrimination because of nonconformity with gender stereotypes." 77 Fed. Reg. 5666. "HUD may also have jurisdiction to process a complaint filed under the Fair Housing Act if an LGBT person obtains housing but then experiences discrimination in the form of sexual harassment."

4

*Id*. "A claim of discrimination based on nonconformity with gender stereotypes may be investigated and enforced under the Fair Housing Act as sex discrimination . . . [and] HUD recently published guidance on this . . . [with] [s]uch claims . . . filed through HUD's Office of Fair Housing and Equal Opportunity." 77 Fed. Reg. 5671.

In an August 20, 2014 interpretive document, HUD included examples in which certain actions "may violate both the Fair Housing Act and the Equal Access Rule." ACTING ASSISTANT SECRETARY FOR PUBLIC AND INDIAN HOUSING JEMINE A. BRYONE, NOTICE PIH 2014-20 (HA), PROGRAM ELIGIBILITY REGARDLESS OF SEXUAL ORIENTATION, GENDER IDENTITY OR MARITAL STATUS AS REQUIRED BY HUD'S EQUAL ACCESS RULE, August 20, 2014, at 6. One of HUD's included examples provided:

> A gay man alleges he was harassed by the PHA's maintenance worker at the public housing complex where he resides. The maintenance worker routinely told the tenant "you walk like a girl" and "you should man up," whistled at him and made sexual gestures. The tenant reported the harassment to the PHA, but the PHA made no effort to stop it. Therefore, as a result of inaction by the PHA, the tenant moved out. Due to the continued harassment, the PHA violated the requirement at 24 CFR 5.105(a)(2)(I) to make housing available without regard to actual or perceived sexual orientation, gender identity, or marital status. The rule prohibits consideration of a person's sexual orientation throughout the tenancy, not just at the time of application. This conduct may also be considered sex discrimination under the Fair Housing Act because the actions of the maintenance worker may constitute discrimination based on gender non-conformity and/or sexual harassment. (In the example above, the tenant moved out of the assisted housing unit as a result of the harassment by the PHA maintenance work. Please note; a program participant is not required to leave the assisted housing unit, or terminate participation in the HCV program, for the purpose of filing a complaint for violation under the Equal Access Rule.)

*Id*. at 6-7.

Given these recent agency actions broadly interpreting the jurisdictional scope of HUD acting under the FHA for discrimination based on sexual orientation, before addressing whether Thomas' claim falls under this expanded jurisdictional scope, the court must determine whether HUD's interpretation of its authority squares with the statutory language of the FHA.[3]

### b. **Evaluating HUD's expanded protections under the FHA**

While HUD's jurisdictional interpretation is not exclusively the product of formal rulemaking, it is entitled to a certain level of deference.[4] *City of Arlington, Tex. v. F.C.C.*, 133 S. Ct. 1863,

---

[3] Respondents in their own brief, allude to the need for more thorough analysis by acknowledging in a footnote that "[o]n March 4, 2015, Petitioner's Complaint was forwarded by FHEO Region IV to the Office of Community Planing and Development within HUD because the alleged conduct may violate the Equal Access [Rule] . . . [r]espondents, however, do not work for the Office of Community planning and Development." (Doc. 8 at 6).

[4] When reviewing an agency action, courts apply competing levels of deference depending on the type of action at issue. "Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference[, although] [t]hey are 'entitled to respect' . . . but only to the extent that they are persuasive." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). While "[generally such] interpretations contained in policy statements, agency manuals, and enforcement guidelines . . . are beyond the *Chevron* pale . . . [the Supreme Court] ha[s] sometimes found reasons for *Chevron* deference even when no such administrative formality [of notice-and-comment] was required and none was afforded." *United States v. Mead Corp.*, 533 U.S. 218, 231, 234 (2001). "[D]eference under *Chevron* . . . does not necessarily require an agency's exercise of express notice-and-

1874 (2013). Assuming the most deferential level of review, a court is confronted with two questions: "[f]irst, always, is the question whether Congress has directly spoken to the precise question at issue . . . [and] if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). "No matter how it is framed [either 'jurisdictional' or 'nonjurisdictional'], the question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, **whether the agency has stayed within the bounds of its statutory authority**." *City of Arlington*, 133 S. Ct. at 1868.

Here, the FHA explicitly makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, **sex**, familial status, or national origin." 42 U.S.C. § 3604(b) (emphasis added). While Congress included precise

---

comment rulemaking power." *Edelman v. Lynchburg College*, 535 U.S. 106, 114 (2002). For example where, "the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time all indicate that *Chevron* provides the appropriate legal lens through which to view the legality of the Agency interpretation." *Barnhart v. Walton*, 535 U.S. 212, 222 (2002).

definitions for certain terms in the FHA (such as "familial status" in 42 U.S.C. § 3602(k)), Congress did not define the scope of "sex" discrimination. Rather, Congress generally delegated administration of the FHA to HUD, 42 U.S.C. § 3608, which implicitly includes the authority to interpret the precise meaning and scope of "sex" for purposes of § 3604(b). See *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 697-98 (1995) (finding "harm" undefined in the Endangered Species Act to be ambiguous and subject to the EPA's reasonable interpretation).

Given the ambiguity of "sex" in the FHA, the court must determine whether HUD's interpretation is permissible. Importantly, HUD's expanded definition of "sex" under § 3604(b) does not broadly include all types of discrimination based on sexual orientation, but rather discretely includes discrimination for gender non-conformity. Mirroring the reasoning in the Supreme Court's plurality opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), prohibited discrimination by individuals of the **same** sex stems from non-conformity to male and female stereotypes rather than separate and distinct sexual orientation grounds. As an example of this type of impermissible stereotyping under the FHA, HUD points to discrimination for a gay man walking "like a girl" or a lesbian woman dressing in masculine clothes. B%RYONE at 6-7. These types of expanded protections for such individuals under the FHA is directly rooted in non-conformity with male or female gender

stereotypes, and not directly derivative of sexual orientation as an independent and separate ground for protection.

The distinction drawn by HUD under the FHA is similar to a distinction made by the undersigned in the analogous context of Title VII.[5] In *E.E.O.C. v. McPherson Companies, Inc.*, the court determined that various gay slurs towards a masculine male in the workplace were outside the scope of "the narrowly tailored stereotype theory of sex discrimination" of *Price Waterhouse* due to the lack of "obvious gender non-conformity" by the plaintiff. 914 F.Supp.2d 1234, 1243 (N.D. Ala. 2012). Such a distinction is in accord with "all the previous stereotyping cases [where] there was undisputed evidence that the male target of the alleged harassing behavior clearly displayed effeminate characteristics . . . virtually advertis[ing] their non-conforming sexual image." *Id.* at 1242 n.8, 1243. While these cases often involve harassment that is offensive, relief for "sex" discrimination is narrowly limited and expanding such protections further would "require action by Congress." *Id*. at 1245.

Considering the deference due by the court to agency

---

[5] "Most courts applying the FHA, as amended by the FHAA, have analogized it to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., which prohibits discrimination in employment." *Larkin v. State of Mich. Dep't of Soc. Servs.*, 89 F.3d 285, 289 (6th Cir. 1996) citing *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1501 (10th Cir. 1995) and *Doe v. City of Butler, Pa.*, 892 F.2d 315, 323 (3rd Cir. 1989); see *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997).

interpretations, HUD's narrow tailoring of jurisdiction for discrimination based on sexual orientation to protections for gender stereotyping in its interpretation of the FHA is a permissible reading of "sex." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989); but see *McPherson*, 914 F.Supp.2d at 1242 n.8 ("This may or may not be good jurisprudence").

    c.    **Thomas' claim under the FHA**

While HUD has jurisdiction under the FHA over discrimination based on gender non-conformity, HUD lacks jurisdiction to enforce Thomas' claim which flatly alleges discrimination "because he is not gay." (Doc. 1 at 6 and Doc. 9 at 7). Thomas does not petition under a theory of gender non-conformity but rather relies on sexual orientation as the sole basis for discrimination separate and independent of gender. (Doc. 1 and Doc. 9). In fact, Thomas alleges that he was discriminated against based on his **conformity** to male stereotypes, such as stereotypes regarding cooking and buying furniture. (Doc. 9 at 37). Even under HUD's expanded interpretation of the FHA for gender stereotyping, these allegations are outside the scope of the FHA's "sex" discrimination protection and therefore HUD lacks the jurisdiction for respondents to act upon them.

## II.    Jurisdiction under the Equal Access Rule

Beyond the FHA, HUD's promulgation of the Equal Access Rule requires recipients of federal funds to abstain from discrimination

based on sexual orientation. 77 Fed. Reg. 5662-01. While the particular facts in this case are inconclusive, it appears from the filings that the housing involved, "Aletheia House", is a recipient of federal funds and subject to the Equal Access Rule. (Doc. 8-1 at 10-11). However, Thomas sought a writ of mandamus for relief against two employees of HUD's Office of Fair Housing and Equal Opportunity whereas administration of the Equal Access Rule is under the Office of Community Planning and Development ("CPD"). *Id.* Further, HUD has forwarded Thomas' complaint to CPD and it is currently under investigation (Doc. 8-1 at 10-11) meaning that even if Thomas were to make a case for relief, it would not be ripe for review. *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003). Therefore, there is no jurisdiction for relief on the basis of the Equal Access Rule.

## CONCLUSION

For the reasons detailed above, the court will by separate order **grant** defendants' motion to dismiss and **deny** petitioner's motion for a ruling.

DONE this 16th day of June, 2015.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE